WILBER LIME PRODUCTS, INC., Plaintiff-Respondent,

v.

Renee L. AHRNDT, Renee L. Ahrndt, as Attorney-in-Fact for Shirley D. Ahrndt, Renee L. Ahrndt, as Personal Representative of the Estate of Robert J. Ahrndt and Renee L. Ahrndt, as Personal Representative of the Estate of Shirley D. Ahrndt, Defendants,

SONNENTAG FAMILY LIMITED PARTNERSHIP, Defendant-Appellant.

Court of Appeals

*No. 03–0838–FT. Submitted on briefs August 25, 2003.— Decided November 25, 2003.*

2003 WI App 259

(Also reported in 673 N.W.2d 339.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John B. Wagman*, of *The Law Offices of Tuchscherer, Eckert, Ruffi & Wagman, S.C., a limited liability organization*, Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Bruce J. Brovold* and *Keith J. Pilger* of *Kostner, Koslo & Brovold, LLC*, Arcadia.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Wilber Lime Products held a right of first refusal to twenty-five acres of a 180–acre

farm owned by Robert Ahrndt.[1] Upon Ahrndt's death, his estate sold the parcel to Renee Ahrndt. The trial court held that this sale triggered Wilber Lime's right to purchase the twenty-five acres. We agree. We further conclude that Wilber Lime may purchase the twenty-five acres at its fair market value and we remand to the trial court to determine that figure.

## BACKGROUND

¶ 2. Robert Ahrndt owned a 180–acre farm in Caledonia, Wisconsin. Wilber Lime held a right of first refusal to twenty-five of the acres. The right of first refusal was contained in a mineral lease dated July 3, 1992. The lease granted "unto LESSEE the Right of First Refusal to Purchase any of the lands herein described for an amount equal to any bona fide written offer to purchase tendered to OWNER by any THIRD PARTY." The right of first refusal was effective until the expiration of the lease on July 3, 2002.

¶ 3. Ahrndt died on July 9, 1994. His daughter, Renee Ahrndt, purchased the entire farm, including the twenty-five acres, from the estate on September 19, 1994. Wilber Lime received no notice of the transaction.

¶ 4. Through several transactions that are not germane to this opinion, Sonnentag Family Limited Parnership agreed that, when Wilber Lime's right of first refusal terminated, Sonnentag would buy twenty of the twenty-five acres from Renee.

¶ 5. Sometime after Wilber Lime's right of first refusal terminated, Wilber Lime learned that Renee had purchased the 180–acre farm at a time when Wilber

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

We granted leave to appeal on May 1, 2003.

Lime's right of first refusal was still in effect. Wilber Lime then filed this action, claiming it was entitled to purchase the twenty-five acres when the land was sold from Robert Ahrndt's estate to Renee. Sonnentag filed a motion for summary judgment, arguing Wilber Lime's right of first refusal was never triggered before it was terminated.

¶ 6. The circuit court concluded Wilber Lime's right of first refusal was triggered by the sale to Renee and that Wilber Lime was entitled to specific performance. The court stated that Wilber Lime was entitled to purchase the twenty-five acres "at a price to be determined at a later date." The court therefore granted summary judgment in favor of Wilber Lime. Sonnentag appeals.

## STANDARD OF REVIEW

■

¶ 7. We review summary judgment decisions independently, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–17, 401 N.W.2d 816 (1987). That methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

## DISCUSSION

¶ 8. This is a case of first impression in Wisconsin. Authority in other jurisdictions is split. The circuit court, in a thoughtful opinion, concluded that the position exemplified by *Brenner v. Duncan*, 27 N.W.2d 320 (Mich. 1947), was appropriate. There, the Michigan Supreme Court determined that the sale of a large parcel of land triggers a right of first refusal on a smaller portion within the large parcel. *Id.* at 322.

The terms of the lease imposed . . . a duty [on the landowner], before selling [the land], to fix a specific sum as the amount at which she was willing to sell the premises in question and to afford the [owner of the right of first refusal] an opportunity to buy the same at such figure.

*Id.* The entire parcel in *Brenner* was sold for $15,000. However, there was no specific sum allotted to the smaller parcel subject to the right of first refusal. *Id.* The court held that the landowner could not rely on the lack of the specific sum to defeat the right of first refusal. *Id.* The court concluded that the landowner "must be deemed to have sold the . . . parcel for a sum bearing such ratio to $15,000 as the value of said parcel bears to the value of the entire . . . parcel. Plaintiffs are entitled to purchase the [smaller parcel] for such figure, if they so desire." *Id.* This calculation established a per-acre purchase price of the land.

¶ 9. The ruling in *Brenner* recognizes the landowner's right to dispose of land as the owner wishes at a price the owner is willing to accept. The ruling construes the package deal as triggering the right of first refusal on the smaller parcel. At the same time, the ruling protects the holder of the right of first refusal's ability to exercise the holder's option when the land is sold. To determine otherwise would enable the landowner to make an end run around his or her obligation to the holder of the right of first refusal. In *The Berry-Iverson Co. v. Johnson*, 242 N.W.2d 126, 134 (N.D. 1976), the North Dakota Supreme Court noted:

[W]e conclude that an intention to sell a larger parcel of land, including a tract under lease to a tenant, is evidence of an intention to sell the leased premises, even where no separate apportionment of value is made by owner and purchaser. To conclude otherwise would

permit an owner and prospective purchaser to, in effect, destroy a bargained-for purchase preemption before the expiration of the term for which such preemption was obtained.

¶ 10. The majority of jurisdictions disagree with this approach. For example, in *Chapman v. Mutual Life Ins. Co.*, 800 P.2d 1147 (Wyo. 1990), the Wyoming Supreme Court determined that an attempt to sell a large parcel of land did not trigger a right of first refusal on a smaller portion. *Id.* at 1151. However, the court still recognized the validity of the right of first refusal on the smaller portion. In order to protect that right, the court enjoined the sale of the large parcel. The right of first refusal would not be triggered until the owner received an offer specifically for the smaller portion. In the meantime, the large parcel could not be sold. This decision "recognizes [the parties'] agreement and provides the opportunity for its performance without judicial intrusion into establishment of the price term of any desired sale." *Id.* at 1152. The right of first refusal "remains in an unripened or suspended state, awaiting the energizing spark provided when the condition precedent of intent and offer is met." *Id.* at 1152.

¶ 11. The Fourth Circuit Court of Appeals took a middle road in *Pantry Pride Enters. v. The Stop & Shop Cos.*, 806 F.2d 1227, 1230 (4th Cir. 1986). The court commented on some of its concerns about the appropriate remedy:

> First, if the lessor sold the leased and nonleased portions together, he would probably receive a greater price than if he sold the properties separately. By forcing the lessor to sell only the leased portion, the court may be depriving the lessor of this premium. Second, the remaining property may be difficult to sell without the attached leased portion. Third, specific

performance forces the lessor to separate his contiguous property merely because he leased a portion of it to the lessee. Because of these equitable considerations, most courts do not grant specific performance, but simply protect the lessee's option by enjoining the sale of the leased portion.

That said, the court concluded that the right of first refusal was triggered and that awarding specific performance was consistent with the parties' intent when they agreed to the right of first refusal. *Id.* However, the court did not think that a simple pro rata valuation was fair. Instead, the court remanded the case for an allocation of the fair market value of the property burdened by the right of first refusal. *Id.* at 1231. "Permitting the exercise of the first refusal right [based on the purchase price of the whole] provides [the holder of the right] a windfall for which it never bargained in the lease." *Id.* It would bear "no relation to its worth" and the holder of the right of first refusal would "have acquired [the property] at an absurdly low price and on terms never really agreed to between [the parties]." *Id.*

¶ 12. We conclude that the *Pantry Pride* approach is the most persuasive. Therefore, we agree with the circuit court's decision that the sale of the entire 180–acre farm to Renee triggered Wilber Lime's right of first refusal to the twenty-five acres. Granting specific performance protects Wilber Lime's right of first refusal. Wilber Lime expected to be offered the opportunity to purchase the twenty-five acres in the event they were ever sold. The twenty-five acres were sold, albeit as part of a package deal. Wilber Lime should therefore have had the right to purchase the land.

¶ 13. Further, like the court in *Pantry Pride*, we recognize the possibility that the acres being sold are

not all of equal value. We conclude that the most equitable resolution is to determine the fair market value of the twenty-five acres. This protects the landowner from being forced to sell the twenty-five acres at a price lower than its fair market value and therefore lower than the owner would accept if the twenty-five acres were sold alone. It also prevents Wilber Lime from receiving a windfall of being able to purchase the land at a price lower than its value. This approach best fulfills the intentions of the parties when they entered into the agreement granting Wilber Lime the right of first refusal.

██

¶ 14. We therefore remand the case to the trial court for a determination of the fair market value of the twenty-five acres. Wilber Lime will then have the opportunity to purchase the twenty-five acres at that price if it so chooses.

*By the Court.*—Order affirmed and cause remanded with directions.