# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP679 |
| COMPLETE TITLE: | MS Real Estate Holdings, LLC,<br>      Plaintiff-Appellant,<br>   v.<br>Donald P. Fox Family Trust, Jean A. Fox<br>Revocable Living<br>Trust, Jean A. Fox, Michael J. Fox, Thomas P.<br>Fox, Karen<br>L. Brazee, Carol L. Brewer, Ellen J. Fox and Amy<br>J. Alaniz,<br>      Defendants-Respondents-Petitioners. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 356 Wis. 2d 307, 853 N.W.2d 627)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 84

| | |
|---|---|
| OPINION FILED: | May 15, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 3, 3015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Outagamie |
|   JUDGE: | Michael W. Gage |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the defendants-respondents-petitioners, there were briefs by *Charles D. Koehler*, *Michael C. Menghini*, and *Herrling Clark Law Firm, Ltd.*, and oral argument by *Charles D. Koehler*.



    For the plaintiff-appellant, there was a brief by *Jordan J. Hemaidan*, *Michael P. Screnock*, and *Michael Best & Friedrich LLP*, Madison. Oral argument by *Jordan Hemaidan.*

There was an amicus curiae brief by *Cori Moore Lamont* and *Wisconsin Realtors Association*, Madison, on behalf of the Wisconsin Realtors Association.

2015 WI 49

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP679
(L.C. No. 2012CV214)

STATE OF WISCONSIN      :      IN SUPREME COURT

MS Real Estate Holdings, LLC,

      Plaintiff-Appellant,

    v.

Donald P. Fox Family Trust, Jean A. Fox Revocable Living

Trust, Jean A. Fox, Michael J. Fox, Thomas P. Fox, Karen

L. Brazee, Carol L. Brewer, Ellen J. Fox and Amy J. Alaniz,

      Defendants-Respondents-Petitioners.

**FILED**

**MAY 15, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J. We review a published decision of the court of appeals[1] reversing the Outagamie County

---

[1] MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust, 2014 WI App 84, 356 Wis. 2d 307, 853 N.W.2d 627.

circuit court's order[2] granting summary judgment in favor of Donald P. Fox Family Trust, Jean A. Fox Revocable Living Trust, Jean A. Fox, Michael J. Fox, Thomas P. Fox, Karen L. Brazee, Carol L. Brewer, Ellen J. Fox, and Amy J. Alniz ("the Foxes"). The Foxes moved for summary judgment, arguing that the right of first refusal contract between the Foxes and MS Real Estate Holdings, LLC ("MS Real Estate")[3] was (1) indefinite and (2) terminable at will. The circuit court concluded that the right of first refusal contract was indefinite and subject to termination at will, by either party, after a reasonable period of time. This was so, the circuit court reasoned, because the right of first refusal contract identified neither a specific duration for the contract, nor an event terminating the contract that was certain to occur.

¶2 The court of appeals reversed, concluding that the right of first refusal contract is not indefinite. MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust, 2014 WI App 84, ¶23, 356 Wis. 2d 307, 853 N.W.2d 627. The court of appeals concluded that the right of first refusal contract is not indefinite because in the event MS Real Estate fails to exercise the right of first refusal to purchase, such failure would necessarily constitute a waiver of the right to lease. Id. Therefore, the court of appeals concluded the entire right of

---

[2] The Honorable Michael W. Gage, presiding.

[3] Formerly known as Tidy View Dairy, Inc.

2

first refusal contract (that is, both the purchase and lease provisions) expires only when MS Real Estate either exercises, or declines to exercise, its right to purchase. Id., ¶¶29-31.

¶3 The sole issue presented for our consideration is whether a triggering event uncertain to occur renders a right of first refusal contract indefinite, thereby allowing a party to terminate the contract at will after a reasonable period of time.

¶4 We hold that a right of first refusal contract is definite as to duration when it specifies an event that triggers the right and requires the right holder to either exercise or waive the right within a specified period of time thereafter, even if the triggering event is not certain to occur. Therefore, the right of first refusal contract at issue here is not terminable at will after a reasonable period of time. Rather, by the terms of the contract, the right of first refusal continues until there is a sale of the property, either to MS Real Estate or to a third party in the event that MS Real Estate declines to exercise its right of first refusal to purchase, thereby waiving its right. Accordingly, the decision of the court of appeals is affirmed.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶5 MS Real Estate operates a dairy farm that adjoins approximately 450 acres of farmland in the Town of Freedom in Outagamie County, Wisconsin, owned by the Foxes ("the Fox Land"). On January 16, 1998, MS Real Estate, as Tidy View Dairy, Inc., contracted with Donald P. Fox and Jean A. Fox for a

3

right of first refusal to purchase or lease the Fox Land. MS Real Estate paid Donald and Jean Fox $4,000[4] for the right of first refusal to purchase the Fox Land and the right of first refusal to lease the Fox Land.

¶6    The purchase provision of the right of first refusal contract states:

Section 1: Right of First Refusal to Purchase

Fox grants and conveys to Tidy-View a first right to purchase the Property, or any part thereof, for the same price and on the same terms which Fox is willing to transfer such Property to another party. Prior to such transfer, Fox shall deliver to Tidy-View a written copy of the Offer, which Fox is willing to accept. Tidy-View shall then have 15 (fifteen) days in which to accept or reject the Offer according to its price, terms and conditions. If the Offer is accepted, the transfer shall be closed in accordance with the Offer with Tidy-View as purchaser. If the Offer is rejected, Fox may complete the sale in strict compliance with the Offer. If the sale is not closed, this first right of refusal shall again take effect.

¶7    Under the Right of First Refusal to Purchase provision, should the Foxes receive an acceptable offer to purchase, they must submit the offer to MS Real Estate—the successor to Tidy-View, see supra n.3. MS Real Estate would then have 15 days to accept or reject the offer. If MS Real Estate rejects the offer, the Foxes may complete the sale with the third-party that made the initial offer, but only on the

---

[4] There is some dispute in the record as to whether MS Real Estate paid $4,000 or $4,500 for the right of first refusal. In either event, the consideration paid by MS Real Estate is not a factor in our analysis.

terms of the initial offer accepted by the Foxes. The contract also provides that the right of first refusal to purchase reattaches if the third-party sale does not close.

¶8    The Right to Lease provision states:

Section 2: Right to Lease

2.1 Leasing Rights. Fox grants and conveys to Tidy-View a first right to lease the Property, or any part thereof, for the same price and on the same terms which Fox is wiling to Lease such Property to another party. Prior to execution of any Lease, Fox shall deliver to Tidy-View a written copy of the Lease, which Fox is willing to accept. Tidy-View shall then have 15 (fifteen) days in which to accept or reject the Lease according to its price, terms and conditions. If the Lease is accepted, Tidy-View shall be obligated to make all payments in accordance with the Lease with Tidy-View as Lessee. If the Lease is rejected, Fox may execute the Lease as Lessor with the other party as Lessee. If the Lease is not executed, the first right to lease shall again take effect.

¶9    The Right to Lease provision provides that MS Real Estate has a first right to lease the Fox Land which operates in a manner similar to the Right of First Refusal to Purchase provision. If the Foxes receive a lease offer they would accept, they must forward the offer to MS Real Estate. MS Real Estate must either accept or reject the lease offer within 15 days. If MS Real Estate rejects the lease, the Foxes may execute the lease with the third-party. If the Foxes do not execute the lease, then MS Real Estate's first right to lease reattaches.

¶10   The lease provision also includes a Continuing Rights provision under Section 2.2, which states that the right to

lease "shall continue for any subsequent renewal of a Lease with another party or upon entering into a new Lease with any other party. It is specifically intended that this leasing right shall not extinguish unless waived by [MS Real Estate]."

¶11 The right of first refusal contract also contains a Binding Effect provision under Section 4, which states that "[t]his Agreement shall be binding upon the respective parties, their heirs, personal representatives, successors in interest and assigns."

¶12 The Foxes leased the Fox Land to MS Real Estate in 2001. On October 4, 2006, Donald Fox sent MS Real Estate a commercial offer to purchase 37.4 acres of the Fox Land, putting MS Real Estate on notice that it had 15 days to accept or reject the offer. MS Real Estate declined to exercise its right to purchase the 37.4 acres. MS Real Estate notified the Foxes by letter and attached an agreement entitled "Release of Parcel From Right of First Refusal." The letter stated that the attached agreement constituted waiver of the right of first refusal as to the 37.4 acres in question and reasserted MS Real Estate's right to the remainder of the Fox Land. However, the sale did not close, and, under the terms of the right of first refusal contract, the right of first refusal to purchase reattached.

¶13 On January 11, 2007, the parties executed a five-year land use agreement, which expired on January 11, 2012. The agreement contained a handwritten provision that stated MS Real Estate had the right of first refusal to purchase the land and

6

that if the Foxes sold any portion of the Fox Land, the rent would be adjusted accordingly.

¶14 On July 29, 2011, the Foxes sent a notice to MS Real Estate which noted that their lease agreement would expire in January. In that notice, the Foxes invited MS Real Estate to submit a bid to lease the property beginning in 2012. The Foxes sent a second notice on October 26, 2011, which again requested that MS Real Estate present a bid on a 2012 lease of the Fox land. The notice also acknowledged MS Real Estate's right to first lease and that the Foxes would follow the procedure for allowing MS Real Estate to exercise its right should they receive other bids to lease the property.

¶15 MS Real Estate responded on November 8, 2011, by proposing two leases for the Foxes to choose between: a one-year lease and a three-year lease. The lease proposals also referenced MS Real Estate's right of first refusal and its intent to abide by the contract's provisions.

¶16 On December 1, 2011, the Foxes notified MS Real Estate that it was soliciting alternate lease proposals. On December 5, 2011, the Foxes sent MS Real Estate a proposal from Tinedale Cropping to lease the property from January 1, 2012, to December 31, 2016, at an initial price of $200 per acre ("the Tinedale Proposal"). MS Real Estate, believing that the Tinedale Proposal was acceptable to the Foxes, attempted to exercise its right of first lease on December 16, 2011, by notifying the Foxes that it accepted the terms of the Tinedale Proposal. MS Real Estate included a signed lease agreement for the Fox Land

7

under the terms of the Tinedale Proposal. The Foxes refused to execute the lease.

¶17 On February 8, 2012, the Foxes delivered a second lease to MS Real Estate pursuant to the right of first refusal contract which Kavanaugh Farms and the Foxes had executed on February 6, 2012 ("the Kavanaugh Lease"). The Kavanaugh Lease ran from 2012 through 2016 and provided for a rent of $225 per acre in the first year, with a two percent annual increase in the cost per acre. The Foxes did not provide MS Real Estate with a copy of the Kavanaugh Lease prior to its execution, but communicated to MS Real Estate that it retained the right of first lease and could accept the terms of the Kavanaugh Lease.

¶18 On February 12, 2012, MS Real Estate filed suit in Outagamie County circuit court seeking declaratory judgment that the Tinedale Proposal constituted an offer to lease which had been accepted by MS Real Estate under the right of first refusal contract, and seeking damages for breach of contract. In response, the Foxes sent a letter to MS Real Estate on March 6, 2012, purportedly terminating the right of first refusal contract. The Foxes' letter indicated that the right of first refusal contract failed to specify the duration of the contract and did not expressly state that it was intended to be perpetual. Thus, according to the Foxes, either party could terminate the contract after a reasonable time.

¶19 On April 5, 2012, the parties resolved their dispute regarding whether it was the Tinedale Proposal or the Kavanaugh Lease which constituted an acceptable offer subject to MS Real

8

Estate's right to first lease. They did so by entering into a lease under the terms of the Kavanaugh Lease. The Foxes moved for summary judgment on their remaining counterclaim, arguing that the March 6 revocation of the right of first refusal contract was valid because the contract was indefinite and lacked the express language needed to indicate an intent it should endure in perpetuity. The circuit court granted summary judgment in favor of the Foxes, concluding that the right of first refusal contract was indefinite as to duration and that the revocation by the Foxes was reasonable.

¶20 The court of appeals reversed, concluding that "a right of first refusal to purchase . . . is not amenable to the general rule of indefiniteness applied by the circuit court." MS Real Estate Holdings, 356 Wis. 2d 307, ¶13. The court of appeals also determined MS Real Estate's failure to exercise the right of first refusal to purchase would constitute a waiver of the right of first lease under the contract. Id., ¶¶30-31. Thus, the court concluded that the duration of the right of first refusal contract is not indefinite because the contract terminates, in its entirety, upon the sale of the Fox Land. Id., ¶32.

¶21 The Foxes petitioned this court for review, which we granted on November 13, 2014.

## II. STANDARD OF REVIEW

¶22 This case requires us to review a grant of summary judgment. "'We review the grant of a motion for summary judgment de novo, and apply the methodology specified in Wis.

9

Stat. § 802.08. That is, we determine whether there is any genuine issue as to any material fact, and if not, which party is entitled to judgment as a matter of law.'" E-Z Roll Off, LLC v. Cnty. of Oneida, 2011 WI 71, ¶15, 335 Wis. 2d 720, 800 N.W.2d 421 (citation omitted).

¶23 In doing so, we must interpret the right of first refusal contract between the Foxes and MS Real Estate and determine whether it is ambiguous as to its duration. "Whether a contract is ambiguous is . . . a question of law which we review de novo." Mitchell Bank v. Schanke, 2004 WI 13, ¶46, 268 Wis. 2d 571, 676 N.W.2d 849 (quoting Schmitz v. Grudzinski, 141 Wis. 2d 867, 871, 416 N.W.2d 639 (Ct. App. 1987)).

III. DISCUSSION

A. Rights of First Refusal Defined

¶24 A right of first refusal is a contractual right to be first in line should the opportunity to purchase or lease a property arise. "The right of first refusal 'remains in an unripened or suspended state, awaiting the energizing spark provided when the condition precedent of intent and offer is met.'" Wilber Lime Prods., Inc. v. Ahrndt, 2003 WI App 259, ¶10, 268 Wis. 2d 650, 673 N.W.2d 339 (quoting Chapman v. Mut. Life Ins. Co, 800 P.2d 1147, 1152 (Wyo. 1990)). It is "essentially a conditional option dependent upon the decision or the desire of the landlord to sell [or lease]." Last v. Puehler, 19 Wis. 2d 291, 297, 120 N.W.2d 120 (1963). Like an option contract, a right of first refusal must be supported by

10

consideration. 3 E.M. Holmes, Corbin on Contracts § 11.3 (rev. ed. 1996) (hereinafter Corbin).

¶25 However, a right of first refusal is not an option contract. A right of first refusal is

> a right to buy before or ahead of others, thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but, and this is the important point, only if the seller decides to sell. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option.

Edlin v. Soderstrom, 83 Wis. 2d 58, 68, 264 N.W.2d 275 (1978) (citing J.A. Bryant, Jr, Annotation, Pre-emptive Rights to Realty as Violation of Rule Against Perpetuities or Rule Concerning Restraints on Alienation, 40 A.L.R. 3d, 920, 924 (1971)). "The holder of an option can compel a sale by an unwilling owner. The holder of a right of first refusal on a piece of land only has the right to receive an offer to buy the land." Corbin, supra, § 11.3.

¶26 Further, a right of first refusal to purchase or lease land may be a servitude.[5] A servitude is "a legal device that creates a right or obligation that runs either with land or with an interest in land." Nature Conservancy of Wis., Inc. v. Altnau, 2008 WI App 115, ¶7, 313 Wis. 2d 382, 756 N.W.2d 641

---

[5] While it is unnecessary for the outcome of this case to determine whether the right of first refusal contract between the Foxes and MS Real Estate is a servitude, we nonetheless find the rules governing servitudes useful to our analysis.

11

(citing Restatement (Third) of Prop.: Servitudes § 1.1(1) (2000)). Servitudes are subject to the rules against restraints on alienation. Restatement (Third) of Prop.: Servitudes § 3.3.

¶27 A restraint on alienation occurs when a property owner contracts not to sell the property for a specified amount of time. Corbin, supra, § 11.3. Generally, a right of first refusal is not a restraint on alienation if the procedure for exercising the right is reasonable. Id. To determine whether a right of first refusal imposes a restraint on alienation, one must look to the provisions governing the exercise of the right. Restatement (Third) of Prop.: Servitudes § 3.4 cmt. f.

> Lack of clarity may cause substantial harm by making it difficult to obtain financing and exposing potential buyers to threats of litigation. Lengthy periods for exercise of rights of first refusal will also substantially affect alienability of the property. Potential buyers will be deterred by the possibility that they may not know for a lengthy period of time whether they will obtain the property or be obligated to pay the price. The risks of change in their needs and in financial markets will be greater than most buyers will be willing to accept.

Id. However, where the right of first refusal provides for purchase on the same terms and conditions as the owner receives from a third party, the procedure for exercising the right is clear, and the time for exercising the right when it arises is reasonably short, its practical effect on alienation is de minimus. Id. Thus, to determine whether the time for exercising the right of first refusal is reasonable, one must look to when the right is triggered. A right of first refusal is triggered when "the energizing spark" of "intent and offer is

12

met," not when the contract is first created. <u>Wilber Lime Prods.</u>, 268 Wis. 2d 650, ¶10 (citation and quotation omitted).

¶28  When a right of first refusal provides for purchase on the same terms and conditions as an acceptable offer, provides a clear procedure for exercising the right, and provides a reasonable time for exercising the right, it does not operate to prohibit or restrain the sale of property.  Rather, the right of first refusal contract bestows on the holder the right to preempt a third party's purchase when that third party has made an offer the owner will accept.  Corbin, <u>supra</u>, § 11.3.  Where the procedure is clear and the time to exercise the right is reasonable, a right of first refusal "provides a possible buyer who is constantly available."  <u>Bruns v. Rennebohm Drug Stores, Inc.</u>, 151 Wis. 2d 88, 99, 442 N.W.2d 591 (Ct. App. 1989).

¶29  If the property owner receives an acceptable offer, the owner "has the power to create a privilege to sell by merely offering to sell to [the holder of the right of first refusal]." Corbin, <u>supra</u>, § 11.3.  If the holder accepts, he purchases the property.  If the holder declines, the owner may accept the buyer's offer.  Accordingly, "a transaction exclusively contractual in character, such as a right of first refusal," cannot realistically be said to encumber specific property.  10 Powell on Real Property § 72.07 (Michael Allan Wolf ed., LexisNexis Matthew Bender).  This discussion makes clear that, under a right of first refusal contract, landowners such as the Foxes remain free to do with their property as they wish.  The holder of a right of first refusal cannot force landowners to

sell or lease their property unless they freely choose to do so. Even then, landowners may condition such sale or lease on terms that are acceptable to them. In other words, landowners such as the Foxes remain in total control of their property and cannot be forced to act against their will under a right of first refusal contract.

B. Right of First Refusal Contracts That Use a Triggering Event That is Uncertain to Occur Are Not Indefinite as to Duration.

¶30 By their nature, right of first refusal contracts often contemplate a level of uncertainty because such contracts rely on triggering events——usually a landowner's decision to sell——which may or may not occur. See Wilber Lime Prods., 268 Wis. 2d 650, ¶10. The use of an event to determine the duration of a right of first refusal contract renders the duration of the contract sufficiently definite under Wisconsin law. Schneider v. Schneider, 132 Wis. 2d 171, 176, 389 N.W.2d 835 (Ct. App. 1986). The Foxes do not argue that the procedures for MS Real Estate to exercise its rights are unreasonable, but rather that the duration of the entire contract is indefinite. Thus, the question here is whether the uncertainty of when—or even if—the triggering event will occur offends Wisconsin's policy disfavoring perpetual contracts. It does not.

¶31 We begin our analysis, as we must, by noting that Wisconsin courts do not favor perpetual contracts. We are "reluctant to interpret a contract as providing for a perpetual contractual right unless the intention of the contracting parties to provide for the same is clearly stated." Capital

14

Invs., Inc. v. Whitehall Packing Co., 91 Wis. 2d 178, 193, 280 N.W.2d 254 (1979). When the time that a contract is to endure is indefinite, this court will imply a reasonable time for the duration of the contract. Farley v. Salow, 67 Wis. 2d 393, 402, 227 N.W.2d 76 (1975). However, we do not require parties to express duration in temporal terms in order to avoid indefiniteness. Rather, parties are free to identify triggering events that give rise to termination of the contract in one form or another. Schneider, 132 Wis. 2d at 176.

¶32 The Foxes argue that the uncertainty of a triggering event, in this case the sale of the Fox Land, renders the duration for which the right of first refusal contract is to endure indefinite, and therefore violates Wisconsin's policy disfavoring perpetual contracts. The Foxes assert that (a) because the duration of the contract is indefinite, and (b) it contains no express language stating that it is intended to be perpetual, we should imply a reasonable time for performance, after which, the contract is terminable at will by either party. Accordingly, in the Foxes view, the court of appeals exceeded its authority by concluding the contract terminated upon sale.

¶33 We disagree. A specified triggering event, though uncertain to occur, may render a right of first refusal contract sufficiently definite and establish the duration of the right. Id. In Schneider, the court of appeals considered whether an agreement between two brothers that restricted the sale of property held by them as tenants in common was indefinite as to duration because it contained no express amount of time it was

15

to endure, thereby violating the restriction on partition agreements that exceed thirty years under Wis. Stat. § 842.02(1). Id. at 175. The court concluded that the agreement was not indefinite because either of two events——the death of one of the brothers or operation of a right of first refusal provision in the agreement——would allow the land to be partitioned. Id. at 176.

¶34 The Foxes argue that, in Schneider, it is the first event the court listed, death, that made the duration of the contract definite because death is an event certain to occur. The Foxes' reading of Schneider does not persuade us. The court in Schneider provided two independent reasons for concluding that the duration of the contract was sufficiently definite. Schneider, 132 Wis. 2d at 176. The first, death, was certain to occur, though impossible to predict. Id. The second, the exercise of the right of first refusal, though uncertain to occur, depended on one of the brothers seeking to sell his interest in the land. Id. The brothers had signed an agreement that required the sibling who wished to sell his interest in the land to offer it to his brother first. Id. Through the operation of the right of first refusal agreement, either brother could sell his interest in the property at any time. Id. Thus, either death or the sale of the property was sufficient to establish the definiteness of the contract.

¶35 The court's conclusion in Schneider is consistent with the form and function of rights of first refusal. As we explained above, a right of first refusal contract operates in a

16

manner similar to a conditional option contract, though it is not an option contract. See Last, 19 Wis. 2d at 297; Nature Conservancy of Wis., 313 Wis. 2d 382, ¶7; Corbin, supra, § 11.3. Under a right of first refusal contract, the right to purchase property lies dormant until it is awakened by the occurrence of a specified triggering event. Wilber Lime Prods., 268 Wis. 2d 650, ¶10. Unless otherwise specified by the parties, a right of first refusal expires when the triggering event occurs and the holder chooses to either exercise or waive the right. See Cipriano v. Glen Cove Lodge #1458, B.P.O.E., 801 N.E.2d 388, 392 (N.Y. 2003) ("The holder of a right of first refusal must be given the opportunity to exercise the preemptive right, but the right is extinguished when the contract with the third party expires or is abandoned."); Corbin, supra, § 11.3. Accordingly, so long as the right of first refusal clearly identifies a triggering event, whether certain or uncertain to occur, it is definite as to duration.

¶36 Because we hold that a right of first refusal contract is definite as to duration when it specifies an event that triggers the right, even when the triggering event is not certain to occur, we must now interpret the right of first refusal contract between the Foxes and MS Real Estate to determine the triggering event.

C. The Right of First Refusal Contract Terminates Upon Sale of the Fox Land.

¶37 To determine whether the right of first refusal contract between the Foxes and MS Real Estate is indefinite, we

17

must interpret the document. Our goal in interpreting contracts is to determine and carry out the parties' intentions. See Wilson Mut. Ins. Co. v. Falk, 2014 WI 136, ¶23, 360 Wis. 2d 67, 857 N.W.2d 156. "Contract language is construed according to its plain or ordinary meaning, . . . consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" Tufail v. Midwest Hospitality, LLC, 2013 WI 62, ¶28, 348 Wis. 2d 631, 833 N.W.2d 586 (internal citations omitted). If the terms of a contract are plain and unambiguous, we construe it as it stands. Gottsacker v. Monnier, 2005 WI 69, ¶22, 281 Wis. 2d 361, 697 N.W.2d 436. "However, where contractual language is reasonably susceptible to more than one meaning, that language is ambiguous." Nature Conservancy of Wis., 313 Wis. 2d 382, ¶6.

¶38 "The general rule as to construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole." Tempelis v. Aetna Cas. & Sur. Co., 169 Wis. 2d 1, 9, 485 N.W.2d 217 (1992). "When interpreting an ambiguous contract provision, we must reject a construction that renders an unfair or unreasonable result." Gottsacker, 281 Wis. 2d 361, ¶24. We "interpret contracts to give them 'common sense' and 'realistic' meaning." Betz v. Diamond Jim's Auto Sales, 2014 WI 66, ¶68, 355 Wis. 2d 301, 849 N.W.2d 292 (Abrahamson, C.J., dissenting). "[A]mbiguities are resolved against the drafter." Marlowe v. IDS Prop. Cas. Ins. Co., 2013 WI 29, ¶48, 346 Wis. 2d 450, 828 N.W.2d 812.

18

¶39 Read in isolation, the two right of first refusal provisions in the contract between the Foxes and MS Real Estate are not ambiguous. Section one of the contract, which contains the Right of First Refusal to Purchase provision, states:

> Fox grants and conveys to Tidy-View a first right to purchase the Property, or any part thereof, for the same price and on the same terms which Fox is willing to transfer such Property to another party. Prior to transfer, Fox shall deliver to Tidy-View a written copy of the Offer, which Fox is willing to accept. Tidy-View shall then have 15 (fifteen) days in which to accept or reject the Offer according to its price, terms and conditions. If the Offer is accepted, the transfer shall be closed in accordance with the Offer with Tidy-View as purchaser. If the Offer is rejected, Fox may complete the sale in strict compliance with the Offer. If the sale is not closed, this first right of refusal shall again take effect.

(Emphasis added).

¶40 By its terms, this provision terminates upon the sale of the Fox Land. There is no other reasonable interpretation. If the Fox Land is sold to MS Real Estate, then there is no longer a need for the provision. If the Fox Land is sold to a third-party, the right of first refusal to purchase does not reattach. MS Real Estate would waive its right of first refusal to purchase if and when the Fox Land is sold to a third-party, thus extinguishing the right.

¶41 Similarly, the Right of First Lease provision is unambiguous when read in isolation. The section contains two provisions, which read:

> 2.1 Leasing Rights. Fox grants and conveys to Tidy-View a first right to lease the Property or any part thereof, for the same price and on the same terms

19

which Fox is willing to Lease such Property to another party. Prior to execution of any Lease, Fox shall deliver to Tidy-View a written copy of the Lease, which Fox is willing to accept. Tidy-View shall then have 15 (fifteen) days in which to accept or reject the Lease according to its price, terms and conditions. If the Lease is accepted, Tidy-View shall be obligated to make all payments in accordance with the Lease with Tidy-View as Lessee. If the Lease is rejected, Fox may execute the Lease as Lessor with the other party as Lessee. If the Lease is not executed, the first right to lease shall again take effect.

2.2 Continuing Rights. This section 2 right shall continue for any subsequent renewal of a Lease with another party or upon the entering into of a new Lease with any other party. It is specifically intended that this leasing right shall not extinguish unless waived by Tidy-View.

¶42 Standing alone, the plain language of the right of first lease is amenable to only one reasonable interpretation: if the Foxes desire to lease their land, MS Real Estate must be given the first opportunity. Further, this right is expressly intended to continue beyond the provisions of any single lease term and terminates only upon waiver by MS Real Estate.

¶43 The fact that the right of first refusal provisions of the contract are unambiguous when read in isolation does not end the inquiry. Contractual provisions must be interpreted within the context of the contract as a whole. Tempelis, 169 Wis. 2d at 9. As we have noted within the context of insurance policies, provisions that are unambiguous standing alone may be ambiguous in the context of the whole contract. See Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶39, 326 Wis. 2d 300, 786 N.W.2d 15. Here, the fourth section of the contract, titled

20

Binding Effect, creates ambiguity as to the duration of the contract.

¶44 The Binding Effect provision states that the agreement "shall be binding upon the respective parties, their heirs, personal representatives, successors in interest and assigns." This section creates at least two reasonable interpretations regarding the duration of the contract. The first is that the contract is intended to be perpetual. The second is that a sale under the Right of First Refusal to Purchase provision constitutes waiver under the Right of First Lease provision, thus terminating the contract.

¶45 We are reluctant to find a perpetual contractual right unless the contract language evidences that the parties clearly intended the contract to be perpetual. Capital Investments, 91 Wis. 2d at 193. However, the intent to create a perpetual contract does not require the parties to use magic words. If the contract language indicates that they intend the contract to be continual, a court may find a perpetual contract. Here, the Binding Effect provision can be read to create a perpetual contract. The use of the term "successors in interest" suggests that the parties intended the contract to be perpetual. This is so because if the right of first refusal contract is binding on all of the Foxes' successors in interest, then it would be binding on any third-party who purchased the Fox Land. Such an interpretation would give MS Real Estate a permanent right of

21

first refusal to lease regardless of who owns the Fox Land.[6] Thus, MS Real Estate would have a right of first lease to the Fox Land that is enforceable against future owners of the property, assuming it did not exercise its right of first refusal to purchase under section one and did not separately waive its right of first lease under section two.

¶46 This is not the only reasonable interpretation of the contract, however. The contract can also be read to terminate upon the sale of the Fox Land to a third-party. Under this reading, the extent of the Binding Effect provision is limited by the terms of the right of first refusal provisions. As we have explained, under the Right of First Refusal to Purchase provision, MS Real Estate's right to purchase terminates upon sale of the Fox Land, whether the sale is to MS Real Estate or a third-party. In addition, according to Section 2.2 of the Right of First Lease provision, MS Real Estate's lease rights "shall not extinguish unless waived." The contract does not define what constitutes waiver, and because waiver is not defined within the contract, we give the term is its plain or ordinary meaning. Tufail, 348 Wis. 2d 631, ¶28.

¶47 Waiver is defined as "the voluntary relinquishment or abandonment——express or implied——of a legal right or advantage."

---

[6] This interpretation would not create a perpetual right of first refusal to purchase, however. This is because that provision in the contract clearly states that the "first right of refusal shall again take effect" only in the event a sale to a third-party does not close.

Black's Law Dictionary 1717 (9th ed. 2009). Thus, the terms of the contract provide that the right of first lease is waived when MS Real Estate abandons a legal right or advantage under the contract. In this case, that can mean only abandonment of the right to purchase. As the court of appeals correctly noted, if waiver applied solely to the right to lease, then the Right of First Lease provision would be internally inconsistent. MS Real Estate Holdings, 356 Wis. 2d 307, ¶30. This is so because Section 2.2 explicitly states that the right of first lease continues for any subsequent lease, whether entered into by MS Real Estate or a third-party. For such a situation to occur, MS Real Estate would have declined, or "voluntarily relinquished," its first right to lease under Section 2.1. Thus, waiver must mean the relinquishment of a different right under the contract, and the only other right granted to MS Real Estate is the first right to purchase. Accordingly, Section 2.2, read in the context of the contract as a whole, indicates that waiver occurs when MS Real Estate refuses to exercise its right to purchase the Fox Land and allows a third-party to purchase the property.[7]

---

[7] Another reason that "waiver" in Section 2.2 cannot refer to the first right to lease is that it would be redundant. It is well-settled that "[a] construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language useless or meaningless." Maas by Grant v. Ziegler, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992). The first sentence of Section 2.2 states that the first right to lease "shall continue for any subsequent renewal of a Lease with another party or upon the entering into of a new Lease with any other party." The plain meaning of this provision is that the first right to lease is recurring, unlike the first right to purchase. In essence, MS Real Estate can waive its first right
(continued)

23

¶48 We conclude that the second "waiver interpretation" is the more reasonable and commonsense reading of the document as a whole. See Betz, 355 Wis. 2d 301, ¶68. By concluding that waiver under the Right of First Lease provision occurs when MS Real Estate declines to exercise the right of first refusal to purchase, the waiver interpretation gives full effect to each provision of the contract. Under this waiver interpretation, the right of first refusal to purchase remains in effect until the consummation of a sale of the Fox Land. Further, the right of first lease continues, arising each time a lease expires, until it is waived by MS Real Estate's choice not to exercise its right of first refusal to purchase. Finally, under the waiver interpretation, the Binding Effect provision remains enforceable, binding subsequent generations of the Fox family that will inherit the Fox Land until the property is sold.

¶49 The parties' actions also indicate that the waiver interpretation is consistent with their intent. When a contract is ambiguous, the court may look beyond the four corners of the document and consider extrinsic evidence that demonstrates the parties' intent. Betz, 355 Wis. 2d 301, ¶39. Here, the parties' behavior under the contract provides additional support

to lease for every lease as long as the contract is in force. There is no need for MS Real Estate to affirmatively waive this right because it will not suffer any ill-effects for failure to do so. Thus, if we were to read the waiver provision in Section 2.2 as applying only to the right of first lease, the waiver provision would be superfluous.

24

for this waiver interpretation. When the Foxes sent MS Real Estate notice that it had received an offer to purchase 37.4 acres of the Fox Land on October 4, 2006, MS Real Estate notified the Foxes by letter that it did not wish to purchase the land. Enclosed with the letter was an agreement entitled "Release of Parcel From Right of First Refusal." MS Real Estate indicated that the enclosed agreement was a waiver of all its rights to the 37.4 acres under the right of first refusal contract. The following January, when executing a new five year lease, the parties indicated, by hand written addendum, that if any part of the Fox Land was sold during the lease term, the rent would be adjusted accordingly. This addendum also demonstrates that the parties intended a sale executed under the Right of First Refusal to Purchase provision to constitute waiver under the Right of First Lease provision.

¶50 The waiver interpretation also satisfies the rule that we construe any ambiguities in the document against the drafting party. Marlowe, 346 Wis. 2d 450, ¶48. A perpetual interpretation of the contract would give MS Real Estate a right of first lease that ran with the land. Under the perpetual interpretation, MS Real Estate, the drafter of the document, would benefit from a perpetual right of first lease. If we adopted such a reading, it would place MS Real Estate first in line anytime the land would be leased, giving it a clear advantage over any other interested third-party. Construing the contract against MS Real Estate requires us to adopt the waiver interpretation.

25

¶51 Finally, the right of first refusal contract at issue here is not a restraint on the Foxes' ability to alienate the property. A restraint on alienation occurs when a property owner contracts not to sell the property for a specified amount of time. Corbin, supra, § 11.3; see also Wis. Stat. § 700.16(2) (2014-15) ("The power of alienation is suspended when there are no persons in being who, alone or in combination with others, can convey an absolute fee in possession of land, or full ownership of personalty."). As discussed above, where the right of first refusal provides for purchase on the same terms and conditions as the owner receives from a third party, the procedure for exercising the right is clear, and the time for exercising the option when it arises is reasonably short, its practical effect on alienation is de minimus. Corbin, supra, § 11.3. If MS Real Estate desires to purchase the Fox Land, it must be willing to meet the terms and conditions of an offer the Foxes deem acceptable. The procedure for exercising the first right to purchase is clear under the contract. If the Foxes receive an offer they will accept, they must deliver a written copy of the offer to MS Real Estate. MS Real Estate then has 15 days to determine whether to purchase the property on those same terms. We conclude that 15 days is reasonably short such that potential buyers will not be deterred by the possibility that they may not know for a lengthy period whether they will obtain the property.

¶52 MS Real Estate's opportunity to exercise its right of first refusal is completely dependent upon the actions of the

26

Foxes. The Foxes hold all the cards because they are not required to sell or lease their land, and they may use their land however they wish. They could entertain a thousand offers to sell or lease the Fox Land, and cast each one aside without consequence under the contract. In the event an offer for sale or lease is made that they are willing to accept, all that is required is that they give MS Real Estate the opportunity to accept or reject the terms of the offer that they find acceptable. MS Real Estate may not negotiate for more favorable terms. The Foxes alone determine what offer is or is not acceptable. Thus, the right of first refusal contract is not a restriction on alienation and continues to be enforceable.

## IV. CONCLUSION

¶53 We hold that a right of first refusal contract is definite as to duration when it specifies an event that triggers the right and requires the right holder to either exercise or waive the right within a specified period of time thereafter, even if the triggering event is not certain to occur. Therefore, the right of first refusal contract at issue here is not terminable at will after a reasonable period of time. Rather, by the terms of the contract, the right of first refusal continues until there is a sale of the property, either to MS Real Estate or to a third party in the event that MS Real Estate declines to exercise its right of first refusal, thereby waiving the right. Accordingly, the decision of the court of appeals is affirmed.

*By the Court.*-The decision of the court of appeals is affirmed.