NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0295n.06

No. 23-3282

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 09, 2024
KELLY L. STEPHENS, Clerk

MARATHON PETROLEUM COMPANY, LP, a Delaware limited partnership,

    Plaintiff-Appellee,

v.

BULK PETROLEUM CORPORATION, aka Bulk Petroleum Acquisition Corporation; DARSHAN DHALIWAL; DEBBIE DHALIWAL,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before:  KETHLEDGE, THAPAR, and DAVIS, Circuit Judges.

KETHLEDGE, Circuit Judge.  Marathon Petroleum Company sued three defendants—its former franchisee, Bulk Petroleum Corporation, along with Bulk's president and his wife—after they allegedly breached contracts the parties signed during Bulk's bankruptcy proceedings. The defendants countersued with claims of breach, unjust enrichment, and conversion.  Relevant to this appeal, the district court granted summary judgment to Marathon on two of its breach claims and two of Bulk's counterclaims, dismissed some of both parties' claims, and entered judgment for Marathon on Bulk's other counterclaims.  The defendants now appeal.  We affirm.

I.

In 1999, Bulk Petroleum became an authorized "jobber" of Marathon Petroleum—meaning that Bulk purchased Marathon-branded petroleum products directly from Marathon and then resold them at gas stations in Illinois, Indiana, Kentucky, Ohio, and Wisconsin.

In 2005, the parties signed an Improvement Agreement that set specific image and branding requirements for Bulk-owned gas stations that sold Marathon products. As part of that agreement, Marathon agreed to invest funds for Bulk's reimaging work. In turn, the agreement obligated Bulk to meet Marathon's image requirements and to purchase a minimum amount of gasoline each month to repay Marathon's investment. The parties twice amended the Improvement Agreement. They also signed other product-supply and licensing contracts irrelevant to this appeal.

In February 2009, Bulk filed for bankruptcy in the Eastern District of Wisconsin. During those proceedings, Marathon filed a claim for over $14.5 million. Bulk disputed the amount but conceded that it owed millions of dollars to Marathon.

That July, a bankruptcy judge confirmed a reorganization plan for Bulk. That plan had three provisions relevant here. First, the plan required a Bulk affiliate, Convenience Stores Leasing and Management, LLC ("CSLM"), to execute a note promising to pay $6,013,000 to Marathon, beginning with 18 monthly installments of $130,000. Second, the plan required Bulk to guarantee payment of CSLM's note, while Darshan Dhaliwal, Bulk's president, and his wife, Debbie Dhaliwal, further agreed to "personally guarantee" both Bulk and CSLM's obligations to Marathon. Third, the newly reorganized Bulk assumed all existing agreements with Marathon, including obligations under "related agreements that come into effect on and after the effective date" of the reorganization plan.

The parties negotiated one such "related agreement," the Third Amendment to the Improvement Agreement (the "Third Amendment"), during bankruptcy proceedings. The Third Amendment required Bulk to repay a "total investment" amount of $5,135,071 to Marathon. If, however, Bulk complied with image and rebranding requirements and purchased a minimum amount of gasoline each month, that investment amount would amortize over a 30-month period.

The Third Amendment also identified six "termination events" that would entitle Marathon to immediate repayment of the unamortized total investment as well as liquidated damages equal to 50% of the investment amount. Bulk's failure to comply with image requirements "on or after November 30, 2011," was one such event. The Third Amendment conditioned its execution on confirmation of Bulk's reorganization plan, execution of CSLM's note, and execution of the Dhaliwals' personal guaranties. In September 2011, the parties signed the agreement.

CSLM failed to make any of its $130,000 payments to Marathon. In response, Marathon began setting aside part of Bulk's monthly gasoline payments to fulfill CSLM's debt. Months after November 30, 2011, over 60 of Bulk's 73 Marathon-branded gas stations remained out of compliance with image requirements. In 2012, as their business relationship deteriorated, Marathon and Bulk signed a product-supply agreement that terminated their franchise relationship.

Marathon brought this suit in diversity, alleging among other things that Bulk breached the Third Amendment by failing to pay damages after the termination event and that the Dhaliwals breached their personal guaranties by failing to cover Bulk and CSLM's obligations to Marathon. Bulk and the Dhaliwals counterclaimed, alleging among other things that Marathon breached the Third Amendment, breached the 2009 and 2012 product-supply agreements, and violated the Uniform Commercial Code. They also raised a slew of affirmative defenses, including that Marathon frustrated the purpose of the Third Amendment by applying portions of Bulk's payments to CSLM's debt.

After discovery, the parties filed cross-motions for partial summary judgment. The district court granted summary judgment to Marathon on all but five claims: Marathon's claims for breach of the Third Amendment and the Dhaliwals' personal guaranties, and Bulk's claims for breach of

the Third Amendment, the 2009 product-supply agreement, and the 2012 product-supply agreement.

Marathon later filed a motion for reconsideration, which the district court granted. On reconsideration, the district court concluded that Marathon had not frustrated the purpose of any contract, that a termination event had occurred pursuant to the Third Amendment, and that the Third Amendment had served as consideration for the Dhaliwals' personal guaranties. The district court therefore entered summary judgment in Marathon's favor on its remaining claims of breach and on Bulk's counterclaims.

Marathon then filed a motion for summary judgment as to damages, arguing that it was entitled to the damages set forth in the Third Amendment. The district court agreed and awarded $10,546,029 to Marathon. The parties resolved their remaining issues through a stipulated dismissal, as contemplated by *Raceway Properties, Inc. v. Emprise Corp.*, 613 F.2d 656 (6th Cir. 1980). Bulk and the Dhaliwals now appeal the grant of summary judgment, as well as the damages award.

## II.

As an initial matter, Bulk challenges the district court's authority to reconsider its denial of summary judgment. But district courts may revise interlocutory orders "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). We therefore will not review the district court's decision to reconsider the initial denial of summary judgment. Instead, we will review the grant of summary judgment de novo. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020).

A.

Bulk first argues that Marathon was not entitled to summary judgment on its claim that Bulk breached the Third Amendment. As mentioned above, the Third Amendment set forth several "termination events," each of which triggers Marathon's right to terminate the agreement and receive a set sum from Bulk. The parties disagree whether such an event occurred because they dispute the contract's meaning.

Under Ohio law, which the parties agreed would govern the Third Amendment, we look to the "plain and ordinary meaning of the language used in the contract." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). Here, the relevant text, § 8(a)(2), says:

> (a) <u>Termination Event.</u> For purposes of this Agreement, the term "Termination Event" means:
>  . . .
> (2) the failure of BULK to cause the MARATHON® retail outlets supplied by BULK, to be in full compliance with [MARATHON's] image and identification standards for MARATHON branded outlets, at no cost or expense to [MARATHON], on or after November 30, 2011;

Marathon says § 8(a)(2) means that, if Bulk is out of compliance with image standards on November 30, 2011, or any time after, a termination event occurs. Bulk counters that—because this language required it to comply with image standards only "on or after November 30"—it effectively gave "no real deadline."

Bulk interprets § 8(a)(2) in isolation, but we must "examine the contract as a whole." *Sunoco, Inc.*, 953 N.E.2d at 292. And the Third Amendment not only reemphasized Bulk's deadline to comply with image-standard requirements—"Bulk agrees to complete each of the reimaging requirements . . . no later than November 30, 2011"—but further said that "[t]ime is of the essence with respect to" that deadline. In another provision, Bulk likewise agreed to "remain in compliance with those [image] standards for the entire Term" of the Third Amendment. In the

context of the whole contract, then, § 8(a)(2) is not "reasonably subject to dual interpretations[.]" *Daily Servs., LLC v. Transglobal, Inc.*, 221 N.E.3d 868, 885 (Ohio Ct. App. 2023). Marathon's (and the district court's) reading is correct: per the Third Amendment, if Bulk's gas stations are out of compliance with image standards either on November 30, 2011, or any date thereafter, a termination event occurs.

Bulk does not dispute that on November 30, 2011 more than 60 of Bulk's gas stations were out of compliance with Marathon image standards. Instead, it says it thought the November 30, 2011, deadline applied only "if Marathon assisted Bulk with the necessary improvements." But nothing in the contract supports that belief, and since the Third Amendment was unambiguous we will not consider Bulk's extrinsic evidence. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). A termination event occurred here, and thus Bulk breached the Third Amendment by refusing to repay the unamortized investment and liquidated damages as required.

Bulk's main argument is that Marathon "frustrated the purpose" of the Third Amendment by using portions of the money Bulk paid for gasoline to instead pay off CSLM's debt. Since this action breached the contract first, Bulk contends, Marathon's breach claim must go to trial. But this action could not have frustrated the purpose of the Third Amendment, because the Third Amendment was expressly conditioned on the confirmation of Bulk's reorganization plan—the plan that required Bulk to "unconditionally guarantee[] payment of the note executed by CSLM." And a guaranty of payment does not require a creditor to "exhaust[] remedies against the debtor," or to "first seek collection from the principal debtor," or even to "notify the guarantor of nonpayment of the note by the principal debtor." *Park Bank v. Westburg*, 832 N.W.2d 539, 551 (Wis. 2013); *see Campco Distributors, Inc. v. Fries*, 537 N.E.2d 661, 662 (Ohio Ct. App. 1987) ("The creditor need not pursue and exhaust the principal before proceeding against the

guarantor."). Despite Bulk's allegations that Marathon was "steal[ing] from Bulk," then, Marathon was within its rights to allocate the funds it received from Bulk, CSLM's unconditional guarantor, to cover the monthly debt obligation first.

Bulk also argues that the Third Amendment was superseded by another contract—the 2012 product-supply agreement. True, that agreement included an integration clause saying that "[a]ny prior agreement . . . pertaining to the supply of any product or the relationship of the parties is superseded by" the 2012 agreement. But under Wisconsin law—which the parties agreed would govern the 2012 agreement—integration clauses affect only agreements that "relate to the same subject matter as the agreement in question." *Matthew v. Am. Fam. Mut. Ins. Co.*, 195 N.W.2d 611, 614 (Wis. 1972). The Third Amendment related to Bulk's debt repayment and to image requirements for Bulk's gas stations, not to product supply. Moreover, the 2012 agreement recognized the continuing validity of the Improvement Agreement and its amendments. At one point, for example, the 2012 agreement said that Bulk's fulfillment of a purchase "does not constitute fulfillment of [its] purchase obligations under any Improvement Agreement, . . . or similar agreement . . . however denominated, and whenever executed by them." Clauses like this would be "superfluous" if the integration clause nullified the Third Amendment. *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 864 N.W.2d 83, 96 n.7 (Wis. 2015).

We make shorter work of Bulk's other arguments. Bulk vaguely asserts that the Third Amendment was non-binding based on "duress, lack of consideration, and unconscionability," and that Bulk had a legal excuse for its breach. These arguments are undeveloped and thus forfeited. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). Bulk likewise waived its argument that it met the minimum-purchase requirements in the Third Amendment. *See* Stipulated Order, R. 216, PageID 3319. Bulk's argument that the cancellation of the franchise agreement was not a

termination event is irrelevant. Finally, Bulk challenges the Third Amendment's liquidated-damages clause. But the district court dismissed that challenge on *res judicata* grounds, and nowhere in Bulk's brief—or in its cited sections of the briefs below—does Bulk contest the district court's legal determination. Where "a plaintiff fails to address the district court's reasoning in disposing of a claim on summary judgment" we deem that claim "forfeited." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019). So we deem it here.

## B.

Bulk likewise argues that Marathon was not entitled to summary judgment on Bulk's counterclaims that Marathon breached its obligations under both the 2009 product-service agreement and the Third Amendment. These claims fail for the same reason that its defense to Marathon's breach claim fails: Bulk's personal guaranty of CSLM's debt entitled Marathon to allocate the $130,000 payment however it liked, so Marathon's actions did not breach its obligations under those agreements.

## C.

Bulk next argues that the district court wrongfully granted summary judgment to Marathon on its claim that Darshan and Debbie Dhaliwal breached their personal guaranties of Bulk and CSLM's obligations.

Guaranties, like all contracts, require consideration. *Bono v. McCutcheon*, 824 N.E.2d 1013, 1017 (Ohio Ct. App. 2005). Bulk claims that the Dhaliwals' guaranties lacked consideration, because the consideration recited in the guaranties—that they were "given to induce [Marathon] to extend business credit to [Bulk] in an amount [Marathon] would not otherwise extend"—was not actually exchanged. As the district court carefully explained, however, a contract remains binding if there was actual, valuable consideration that was "different in kind or amount from that

named in the deed." *Conklin v. Hancock*, 66 N.E. 518, 520 (Ohio 1903). And here undisputed evidence shows that the Dhaliwals' guaranties were express conditions of Bulk's reorganization plan and the Third Amendment. Specifically, the reorganization plan required the Dhaliwals to "personally guarantee [Bulk's] obligations to Marathon" "prior to [the plan's] Effective date," and the Third Amendment was "subject to" the Dhaliwals "execution and delivery of" those unconditional guaranties. Moreover, Bulk does not dispute that Marathon compromised its allowed bankruptcy claims and—through the Third Amendment—gave Bulk additional time to repay its debt to Marathon. That "forbearance" provided consideration for the guaranties. *Crocker v. Hood*, 681 N.E.2d 460, 463 (Ohio Ct. App. 1996).

Bulk briefly contends that the guaranties required written notice prior to payment and that Marathon failed to give this notice. But the guaranties "waive[d] notice" of "presentment, demand for payment, default, dishonor, protest or notice of protest."

D.

Finally, Bulk challenges the district court's grant of summary judgment on Bulk's counterclaim that Marathon breached the Uniform Commercial Code. The court did so on the ground that the Third Amendment was not subject to the UCC. Ohio's UCC applies only to a "transaction[] in goods," which is a "contract for sale" of "things" that "are movable." Ohio Rev. Code § 1302.01(A)(8), 1302.02. The Third Amendment, by contrast, primarily detailed Bulk's obligations to improve image standards and the terms of Bulk's repayment of its debt. And as the district court correctly recognized, the Third Amendment contains no "terms typical of those found in a contract concerning the sale of goods, such as price" other than the requirement that Bulk purchase a minimum volume of gasoline each year to pay off its debt to Marathon. Op. at 26.

Bulk focuses on that requirement, arguing that, because the "repayment obligation amortizes based on meeting a minimum for purchases of goods," the Third Amendment is a contract for goods. But when, as here, a mixed contract involves "both goods and services," the UCC applies only if the "predominant factor and purpose of the contract" is "the sale of goods." *Allied Erecting & Dismantling Co. v. Ohio Edison Co.*, 34 N.E.3d 182, 185 (Ohio Ct. App. 2015). And Bulk makes no attempt to argue that the predominant purpose of the contract was the sale of gasoline—in fact, it cites no case law at all. The district court properly granted summary judgment to Marathon on this claim.

*     *     *

The district court's judgment is affirmed.