COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1715**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV540

IN COURT OF APPEALS
DISTRICT III

NICK BALSIMO,

    PLAINTIFF-RESPONDENT,

 V.

VENTURE ONE STOP, INC. D/B/A APPLETON CAMPING CENTER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Reversed and cause remanded with directions*.

Before Stark P.J., Hruz and Gill, JJ.

¶1    HRUZ, J.  Venture One Stop, Inc. d/b/a/ Appleton Camping Center ("ACC") appeals a grant of summary judgment to Nick Balsimo and a denial of summary judgment to ACC. Balsimo entered into a contract to purchase an RV

from ACC. ACC argues the circuit court erred by concluding that a penalties provision in the parties' recreational vehicle purchase contract allowed Balsimo to cancel the contract and return the purchased recreational vehicle ("RV") after Balsimo accepted, paid for, and removed the RV from ACC's lot.

¶2    We agree with ACC that the circuit court erred, as a matter of law, by granting summary judgment to Balsimo. Pursuant to principles of contract interpretation and the Uniform Commercial Code (UCC), as applied in this state under WIS. STAT. chs. 401-411 (2021-22),[1] we conclude that once ACC and Balsimo each fully performed their obligations under the purchase contract, the contract was executed and its penalties provision no longer applied. Under the facts of this case, full performance of the purchase contract occurred no later than when Balsimo took exclusive possession of the RV and removed it from ACC's lot.

¶3    Because the penalties provision no longer applied once the parties fully performed their obligations under the purchase contract, Balsimo could not invoke that provision to cancel the contract and return the RV to ACC. Given that the parties executed the purchase contract, Balsimo is now the legal owner of the RV. Accordingly, we reverse the circuit court's grant of summary judgment to Balsimo and remand for the entry of summary judgment in ACC's favor, for a declaration that Balsimo is the RV's legal owner, and for a determination of damages for ACC's trespass claim.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

**BACKGROUND**

¶4     The relevant facts in this case are undisputed.  On June 15, 2021, Balsimo entered into a contract with ACC for the purchase of a particular RV.[2]  At that time, ACC agreed to sell, and Balsimo agreed to purchase, the RV for a total cash price of $43,892—less the $1,000 down payment Balsimo had already made.  The remaining balance would be due upon delivery of the RV to Balsimo.  The purchase contract did not include a delivery date because Balsimo had not yet decided whether he wanted to purchase additional products, such as warranty or service contracts, and because he had not yet received approval from his bank for a loan.

¶5     Upon signing and returning the purchase contract to ACC, Balsimo explained that he still had not decided whether he wanted to purchase additional products, that he would let ACC know if he wanted to do so, and that he would pay "out of pocket" for those products.  On the same day—June 15, 2021—ACC signed the contract and sent a copy to Balsimo.  ACC also informed Balsimo that upon receiving approval from his bank, ACC could schedule a delivery date.  The parties ultimately scheduled July 1, 2021, as the delivery date.  ACC also agreed to allow Balsimo to decide whether he wanted to add products to his RV purchase on the July 1 delivery date.

---

[2] Balsimo's brief contains only one citation to the record, while the remaining citations are to ACC's appendix and Balsimo's supplemental appendix.  We remind counsel that the appendix is not the record, *see United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322, and that our rules of appellate procedure require a party to include citations to the record in its briefing, *see* WIS. STAT. RULE 809.19(1)(d)-(e), (3)(a)2.

¶6 On July 1, 2021, Balsimo decided to purchase two additional products from ACC—a "Route 66 seven-year Service Contract" and a "Route 66 five-year Roadside Tech 24 Service Contract"—with values totaling $3,504.75. ACC generated a new form to add the two products to the purchase contract, which increased the total cash price to $47,396.75 and the total due on delivery to $43,892.[3]

¶7 The June 15, 2021 contract and the July 1, 2021 contract are identical, except that the July 1 contract includes the delivery date, the two additional products, and a different amount for the total price. At the top of each contract is a provision, titled "Recreational Vehicle Purchase Contract" ("the Offer to Purchase Provision"), stating:

> THIS IS AN OFFER TO PURCHASE THAT, IF ACCEPTED BY THE DEALER OR HIS AUTHORIZED AGENT, WILL BECOME A BINDING PURCHASE CONTRACT FOR THE PURCHASE OF A RECREATIONAL VEHICLE HEREAFTER DESCRIBED AND REFERRED TO AS A VEHICLE. THE DEALER MUST ACCEPT OR REJECT THIS OFFER BY THE CLOSE OF THE DEALER'S NEXT BUSINESS DAY OR THE OFFER IS AUTOMATICALLY VOIDED. UNTIL ACCEPTANCE OR REJECTION OF THE OFFER, THE DEALER SHALL BE PROHIBITED FROM SELLING THE VEHICLE TO ANY OTHER PARTY.

The space provided for the dealer's signature at the bottom of the two contracts is labeled as: "Accepted by dealer or authorized agent authorized signature." (Formatting altered.)

---

[3] In addition to the $1,000 down payment, Balsimo made a $2,504.75 cash payment.

¶8     Both contracts also include the provision at issue in this appeal—namely, the Penalties for Cancellation provision ("the Penalties Provision")—which reads:

> If the Purchaser elects to cancel this contract[,] it is the Dealer's option to require the following forfeitures:
>
> 1. If cancellation is initiated within 24 hours after acceptance by the Dealer, the amount forfeited is 2% of the total cash price of the Recreational Vehicle.
>
> 2. If cancellation is initiated after 24 hours from acceptance by the Dealer, the amount forfeited is 5% of the total cash price of the Recreational Vehicle.
>
> Dealer retains right to bring action for actual damages caused by breach of this contract.

The reverse side of each contract contains additional terms and conditions to which the buyer agrees.[4]

¶9     Balsimo signed the July 1, 2021 contract at 2:23 p.m., and ACC signed the contract minutes later.[5]  Balsimo and his wife then inspected the RV.

---

[4] As it does in all of its RV sales, ACC used a form contract approved by the Wisconsin Department of Transportation (DOT).  The DOT requires RV dealers to include specific language in all of their purchase contracts, including the language in the Penalties Provision.  WIS. ADMIN. CODE § Trans 142.04(2), (4), (6) (Oct. 2017).  WISCONSIN ADMIN. CODE § Trans 142.04(4)(a) (Oct. 2017) requires that the purchase contract

> clearly state that cancellation of a recreational vehicle contract by a purchaser within 24 hours after acceptance by the dealer may subject the purchaser to a penalty of up to 2% of the cash price of the recreational vehicle and that cancellation of the recreational vehicle contract by the purchaser after the 24 hour period may subject the purchaser to penalty of up to 5% of the cash price of the recreational vehicle.

Although they encountered an issue with the RV's furnace, Balsimo and his wife completed and signed a "Delivery Acceptance" form. Balsimo then paid the total due upon delivery to ACC by way of a check. ACC repaired the RV's furnace that same afternoon and then made the RV available to Balsimo so that he could take possession of it. Because of the repairs to the furnace, Balsimo did not take actual possession of the RV until after ACC closed for business on July 1.

¶10 When Balsimo arrived to take the RV, an ACC employee requested that Balsimo install a third-party hitch on his vehicle in a neighboring business's lot. The employee ultimately allowed Balsimo to install the hitch while on ACC's lot after Balsimo expressed concerns with driving the RV "out with just the ball hooked and no weight distribution." Balsimo hitched the RV to his vehicle and left the lot with the RV in tow around 6:30 p.m.

¶11 Approximately one hour and five minutes later, Balsimo returned to ACC's lot and returned the RV. On July 2, 2021, at 12:15 a.m., Balsimo sent an email to ACC explaining that he had encountered additional issues with the RV. Balsimo wrote:

---

[5] ACC and Balsimo disagree as to which purchase contract is the governing contract for purposes of this appeal. ACC argues that the June 15, 2021 contract is the governing contract and that the July 1, 2021 contract is simply a modification of the June 15 contract. Balsimo, on the other hand, argues that the July 1 contract superseded the June 15 contract and, therefore, is the governing contract. These arguments could affect how the Penalties Provision would apply to the underlying facts of this case.

As explained in this opinion, we conclude that: (a) the Penalties Provision no longer applied, as a matter of law, once the parties fully performed the terms of the purchase contract; and (b) full performance occurred no later than when Balsimo took exclusive possession of the RV and removed it from ACC's lot. Because this holding applies equally to both contracts, we need not resolve which contract governed the sale. For ease of reading, we will hereinafter refer to both the June 15 and July 1 contracts as either "the purchase contract" or "the contract."

> We realized there was too much tongue weight for our [E]xpedition after adjusting the hitch a few different times. Wouldn't be safe pulling essentially; especially up or down hills/mountains. Also, we noticed 2 drain caps missing. So we decided to leave it there as we'd likely need a new heavy duty truck to pull it. Hoping you can help us with cancelling this one out. We left the title in the bathroom drawer and locked the door, and dropped the keys in the side door key drop.

¶12     ACC refused to either cancel the purchase contract or issue Balsimo a refund. Instead, ACC demanded that Balsimo remove "his" RV from ACC's lot. Additionally, on July 6, 2021, ACC submitted a Wisconsin Title and License Plate application to the DOT, which issued a confirmation of ownership to Balsimo the following day.[6]

¶13     Balsimo sued ACC, alleging that ACC breached the purchase contract by refusing to refund Balsimo as provided in the Penalties Provision. ACC answered and filed a counterclaim against Balsimo, alleging that the purchase contract was fully performed, and no longer executory, once Balsimo paid ACC for the RV, signed the "Delivery Acceptance" form, accepted delivery of the RV, and removed the RV from ACC's lot. For this reason, ACC alleged that Balsimo held legal title to the RV. ACC further alleged that it had repeatedly demanded that Balsimo remove his RV from its lot and that Balsimo's refusal to

---

[6] Within seven business days following the sale of a vehicle, "the dealer shall process the application for certificate of title, and within the next business day after processing the application, the dealer shall mail or deliver the original application for certificate and all associated materials required by the [DOT] to the [DOT]." WIS. STAT. § 342.16(1)(a).

The confirmation of ownership in this case notes that it is not a title and that the title has been delivered to Balsimo's bank—US Bank NA, Wilmington—as the lien holder. *See* WIS. STAT. § 342.09(1)(b) ("If there is a perfected security interest in a vehicle, the [DOT] shall deliver the certificate of title to the secured party having the primary perfected security interest in the vehicle."). In all events, ACC completed its obligation to deliver the title upon sale.

remove the RV from ACC's lot constituted a trespass. ACC also sought a declaratory judgment determining that Balsimo was the RV's legal owner or, alternatively, that Balsimo had abandoned the RV and ACC could take legal title to it without compensating Balsimo. Finally, ACC sought to enjoin Balsimo from using ACC's lot to store his RV.

¶14 The parties filed cross-motions for summary judgment. In a written decision, the circuit court granted Balsimo's summary judgment motion and denied ACC's motion. The court determined that, under the undisputed facts, the Penalties Provision gave Balsimo the right to cancel the purchase contract and that the provision contained no language allowing ACC "to contest the cancellation, on the basis that [Balsimo] has taken possession of the RV." Instead, the court found that the Penalties Provision gave ACC only two options when a cancellation occurred: (1) ACC could seek 2% of the RV's total cash price if the cancellation occurred within twenty-four hours after acceptance by ACC; or (2) ACC could seek 5% of the total cash price if the cancellation occurred twenty-four hours after acceptance by ACC.

¶15 The circuit court's interpretation of the "acceptance by the [d]ealer" phrase in the Penalties Provision relied on language in the Offer to Purchase Provision. The court explained that "acceptance" in the context of the entire contract "is in reference to the acceptance of the contract. There is no provision that states that the purchaser waives his [or her] right to cancel the contract upon taking possession of the RV." The court thus concluded that Balsimo had a "right to cancel within twenty-four hours after acceptance of the contract by [ACC]" and that ACC had a "right to forfeit 2% of the total cash price to the RV." The court noted it was sympathetic to ACC's argument that its interpretation "could allow a purchaser to return an RV well into the future and only suffer a 5% total cash price

8

penalty"—i.e., the second option in the Penalties Provision—but that, in the context of this case, it only had to "analyze the [Penalties P]rovision within the 24 hour period." The court then awarded Balsimo damages in the amount of the total cash price of the RV less 2%, or $46,448.82.

¶16    Thereafter, Balsimo sought to add his monthly principal and interest loan payments that he had already made for the RV to his damages amount. Balsimo also sought to add future monthly loan payments to his damages "until judgment is paid in full." The circuit court allowed Balsimo to add to the damages amount only the interest payments that Balsimo had already made. The court then entered a final judgment in favor of Balsimo for $48,895.28, plus statutory costs. ACC now appeals.

## DISCUSSION

¶17    We review a circuit court's summary judgment decision de novo, applying the same methodology as the circuit court. *Maxwell v. Hartford Union High Sch. Dist.*, 2012 WI 58, ¶26, 341 Wis. 2d 238, 814 N.W.2d 484. Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Here, the circuit court's grant of summary judgment turned on the interpretation of the purchase contract. Contract interpretation is a question of law that we review independently. *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476.

¶18    ACC argues that the circuit court erroneously interpreted the Penalties Provision by concluding that Balsimo could cancel the purchase contract

and return the RV even after the sale of the RV was completed and Balsimo had taken exclusive possession of the RV. ACC contends that, under a proper reading of the contract and applicable UCC provisions, once Balsimo took possession of the RV, the sale of the RV was complete and the purchase contract had been fully performed; it could not, therefore, still be "canceled." In other words, once the parties fully performed under the purchase contract, the Penalties Provision no longer applied.

¶19 We agree with ACC that the Penalties Provision no longer applied once the parties fully performed their respective obligations under the purchase contract. ACC formally accepted Balsimo's offer to purchase an RV, thereby creating a binding purchase contract, per its terms. The Penalties Provision allowed Balsimo to then cancel the purchase contract and pay the applicable forfeiture. However, and as explained more thoroughly below, the provision applied only *before* the parties fulfilled their respective obligations under the purchase contract. Once ACC delivered the RV to Balsimo on July 1, 2021, and Balsimo paid for and accepted the RV, all of the parties' obligations under the purchase contract were fulfilled. Thereafter, the contract could no longer be canceled, and the Penalties Provision no longer had any effect. And contrary to Balsimo's and the circuit court's reasoning, this result is the same regardless of the timing of ACC's acceptance of the offer to purchase.

¶20 In reaching this conclusion, we look to principles of contract interpretation, the language of the purchase contract, and applicable UCC provisions. Our goal in contract interpretation is to determine and give effect to the parties' intentions. *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 2015 WI 49, ¶37, 362 Wis. 2d 258, 864 N.W.2d 83. The contract's language thus controls this court's interpretation. *See Ash Park, LLC v. Alexander & Bishop,*

***Ltd.***, 2015 WI 65, ¶34, 363 Wis. 2d 699, 866 N.W.2d 679. We construe contract language "according to its plain or ordinary meaning, … consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" ***MS Real Est.***, 362 Wis. 2d 258, ¶37 (citation omitted). "We presume the parties' intent is evidenced by the words they choose, if those words are unambiguous." ***Ash Park***, 363 Wis. 2d 699, ¶35 (citation omitted). If the contract's terms are plain and unambiguous, we construe the contract as it stands.[7] ***MS Real Est.***, 362 Wis. 2d 258, ¶37.

¶21 The general rule of contract construction "is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole." ***Id.***, ¶38 (citation omitted). "Interpretations that give reasonable meaning to each provision in the contract are preferred over interpretations that render a portion of the contract superfluous." ***Ash Park***, 363 Wis. 2d 699, ¶37. Additionally, when we interpret a contract involving a transaction in goods, our interpretation may be affected by Wisconsin's version of the UCC. ***Estate of Kriefall v. Sizzler USA Franchise, Inc.***, 2012 WI 70, ¶21, 342 Wis. 2d 29, 816 N.W.2d 853. Ultimately, the court's role is not to make contracts "but to determine what the parties contracted to do." ***Ash Park***, 363 Wis. 2d 699, ¶38 (citation omitted).

¶22 The purchase contract at issue involves the sale of a good—an RV— to which the UCC provisions relating to sales, found in WIS. STAT. ch. 402, apply.

---

[7] While ACC and Balsimo plainly have different views on the application of the language in the purchase contract, neither of them argues that the contract is ambiguous. Furthermore, neither party disputes that a binding contract existed between them, the timeline of events, or the purchase contract's relevant terms.

*See* WIS. STAT. § 402.102 ("Unless the context otherwise requires, this chapter applies to transactions in goods."); *see also* WIS. STAT. § 402.105(1)(c) (defining "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than money in which the price is to be paid, investment securities … and things in action"). Because the RV sale here implicates the UCC, its provisions supplement the purchase contract to define the parties' legal obligations pertaining to the sale that the contract does not address. *See **Estate of Kriefall***, 342 Wis. 2d 29, ¶22 ("[P]rovisions of the Wisconsin UCC do affect the parties' obligations because transactions in goods are at issue; therefore, we consider … ch. 402 as we construe the parties' written agreements.").

¶23    Consequently, we reject Balsimo's argument that this case is resolved entirely by the purchase contract's language and that the UCC is "entirely irrelevant" and inapplicable because the parties purportedly varied the UCC's effect by executing the contract. *See* WIS. STAT. § 401.302(1) (providing that the effects of UCC provisions may be varied by agreement). Balsimo fails to explain how he believes the purchase contract varied or superseded the effect of the UCC provisions or that the parties agreed it should do so. It is by no means self-evident that any such relevant modification occurred, and the Penalties Provision itself does not expressly affect the applicability of the UCC after a contract has been fully performed.

¶24    Turning to our principal analysis in this case, what the parties contracted to do is clear from the language of the purchase contract—namely, ACC agreed to sell, and Balsimo agreed to purchase, an RV. The Offer to Purchase Provision states that the buyer's offer to purchase, upon acceptance by ACC, becomes "a binding purchase contract for the purchase of" an RV. Pursuant

12

to that purchase contract, ACC must deliver the RV to the buyer on the delivery date, and the buyer must pay the amount due on delivery to physically receive the RV. These contractual obligations mirror the parties' contractual obligations under the UCC. *See* WIS. STAT. § 402.301 ("The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract.").

¶25 The Penalties Provision, however, allows a buyer to cancel the purchase contract after its acceptance by ACC. If a buyer cancels the contract within twenty-four hours of ACC's acceptance, he or she must forfeit 2% of the total cash price of the RV to ACC. If a buyer cancels the contract more than twenty-four hours after ACC's acceptance, he or she must forfeit 5% of the total cash price of the RV to ACC. Despite these enumerated forfeitures, ACC also expressly "retains [the] right to bring action for actual damages caused by breach of this contract." The reference to "this contract" in the Penalties Provision plainly concerns the binding purchase contract mentioned in the Offer to Purchase Provision and elsewhere in the purchase contract.

¶26 When read together with the Offer to Purchase Provision, the Penalties Provision exists to provide a remedy to ACC when a buyer cancels—i.e., breaches—the already binding purchase contract before the buyer performs his or her obligations. In other words, when the buyer no longer desires to purchase the RV, he or she may invoke the Penalties Provision to cancel that purchase, albeit with some financial consequence that increases if the cancellation is not done promptly. By canceling the purchase, both ACC and the buyer no longer need to perform their contractual obligations.

¶27    This manner of canceling a contract is consistent with the UCC provision for cancellation, which provides that a contract is canceled "when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the canceling party also retains any remedy for breach of the whole contract or any unperformed balance." WIS. STAT. § 402.106(1).  The effect of termination is that "all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives." Sec. 402.106(7).  Executory obligations, such as those in the purchase contract here, are obligations that the contracting parties have bound themselves to perform in the future but have not yet completed. *See Edwards v. Petrone*, 160 Wis. 2d 255, 258, 465 N.W.2d 847 (Ct. App. 1990).[8]

¶28    Applying these principles here, once both parties entered into the purchase contract, Balsimo's obligation was to accept the RV and pay the amount due on delivery for the RV, and ACC's obligation was to deliver the RV to Balsimo.  ACC retained, under the Penalties Provision, its rights to the applicable forfeitures and pursuing actual damages caused by Balsimo's breach in canceling the purchase contract.  Thus, had Balsimo decided he no longer desired to purchase the RV and canceled the purchase contract after ACC accepted his offer but *before* he paid for and accepted the RV and *before* ACC physically delivered the RV to him, the Penalties Provision would have applied—thereby discharging the parties of all their obligations.  That scenario, however, is not what happened. Instead, Balsimo and ACC each completed their obligations under the purchase

---

[8] Although the UCC does not define "executory," we turn to common law contract principles to define the term. *See* WIS. STAT. § 401.103(2) ("Unless displaced by particular provisions of [WIS. STAT.] chs. 401 to 411, the principles of law and equity … shall supplement its provisions.").

contract, including Balsimo taking possession of the RV and leaving ACC's lot with it. Once he did so, the Penalties Provision no longer applied.

¶29    Critically, both Balsimo and the circuit court failed to apply the UCC to supplement the requirements of—and legal impacts from—the parties' actions taken pursuant to the purchase contract. In particular, we must focus on when Balsimo fulfilled his obligations under the contract, most notably when he "accepted" the RV. Because the purchase contract does not define what constitutes a buyer's "acceptance" of an RV, we must look to the UCC, which fills this gap. *See Estate of Kriefall*, 342 Wis. 2d 29, ¶¶21-22.

¶30    Under the UCC, "acceptance" of a good occurs in several different ways: (1) the buyer, "[a]fter a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming" or that the buyer will take the goods despite their nonconformity; (2) the buyer fails to make an effective rejection of the goods, but the "acceptance does not occur until the buyer has had a reasonable opportunity to inspect them;" or (3) the buyer "[d]oes any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by the seller." WIS. STAT. § 402.606(1)(a)-(c). Once the buyer accepts the good, he or she is precluded from rejecting that good. WIS. STAT. § 402.607(2).

¶31    Thus, pursuant to WIS. STAT. § 402.606(1)(a), Balsimo "accepted" the RV when, after inspecting the RV and signifying to ACC that the RV was conforming, he took exclusive possession of the RV and left ACC's lot. At that moment, the purchase contract was fully performed, and Balsimo was precluded from rejecting the RV. *See* WIS. STAT. § 402.607(2). Once the contract was fully performed, the sale of the RV was complete, and Balsimo became the owner of the

RV. *See* WIS. STAT. § 402.106(6) (defining "sale" as "the passing of title from the seller to the buyer for a price").[9] At that point, any dispute Balsimo had with the RV relative to ACC constituted an attempt to cancel *the completed sale*, not the purchase contract.

¶32 To be clear as to what constituted performance under the purchase contract and the facts here, ACC was required to deliver the RV to Balsimo on July 1, 2021. *See* WIS. STAT. § 402.503(1) (requiring the seller to "put and hold conforming goods at the buyer's disposition"). ACC, after making repairs to the RV's furnace, delivered the RV to Balsimo. Meanwhile, the purchase contract required Balsimo to accept the RV and to pay the amount due on delivery. Here, Balsimo did so. He inspected the RV, completed and signed a "Delivery Acceptance" form, paid for the RV, hitched it to his vehicle, and left ACC's lot with the RV in his exclusive possession. At that moment, Balsimo fulfilled his obligations under the purchase contract.

¶33 Because ACC delivered the RV to Balsimo, and Balsimo paid for and accepted the RV, ACC and Balsimo executed their contract for the purchase of the RV. *See Edwards*, 160 Wis. 2d at 258 ("An executed contract is a contract under which all promises have been fulfilled and nothing remains to be done."). Because the parties fulfilled their obligations under the purchase contract and because the Penalties Provision has no effect once those obligations are complete,

---

[9] As to title in WIS. STAT. § 402.106(6), WIS. STAT. § 402.401(2) clarifies that:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes the seller's performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place.

Balsimo could no longer invoke the provision to return the RV. There was no longer a way to breach the binding contract to purchase the RV because the sale of the RV was complete. Accordingly, when Balsimo attempted to cancel the purchase contract, he could no longer do so.

¶34 Balsimo argues that, notwithstanding the foregoing, the Penalties Provision clearly gave him a "right to cancel" the purchase contract within twenty-four hours of ACC's acceptance in any and all circumstances. In particular, he contends that the purchase contract does not say that this right to cancel is waived or voided by his taking possession of the RV, and he claims that ACC is asking this court to retroactively add this language to the purchase contract.

¶35 Balsimo improperly reads the Penalties Provision as a standalone provision without considering the purchase contract as a whole, the UCC, or the legal impact of a buyer accepting a sold good. The only reasonable application of the Penalties Provision occurs before the sale and purchase of the RV because the provision discharges the parties' obligations to actually sell and purchase the RV before that has occurred. There is no need for the purchase contract to include the language Balsimo claims ACC is attempting to add because once the sale of the RV is complete, the contract is complete, and there is nothing left for the Penalties Provision to cancel. Such a reading does not add language to the purchase

17

contract; instead, it is a plain-language interpretation of the purchase contract as properly supplemented by the provisions of the UCC.[10]

¶36 To summarize, once Balsimo took exclusive possession of the RV, the parties' obligations under the purchase contract were complete. At that moment, Balsimo could no longer "cancel the contract" and return the RV pursuant to the Penalties Provision. Therefore, Balsimo was not entitled to a refund of the purchase price less the applicable forfeiture. ACC fulfilled its obligation under the purchase contract by delivering the RV to Balsimo, and Balsimo is the owner of the RV. *See* WIS. STAT. § 402.401(2). Consequently, we reverse and remand for the circuit court to enter summary judgment in favor of

---

[10] Balsimo also claims that in *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513 (1978), our supreme court allowed a buyer "to revoke acceptance of a motor home under the UCC even after driving the same for more than 3,650 miles." In *Murray*, however, our supreme court concluded that the plaintiffs—who encountered multiple problems with the motorhome that persisted despite repeated repairs by the defendants—could invoke the remedies available under the UCC, including the right to revoke *acceptance* of the goods, because the defendants' limited warranty remedy—which provided that the "motorhome was free of defects at the time of delivery" and "limited the buyer's remedies to repair or replacement of defective parts"—failed its essential purpose. *Id.* at 417, 419, 421-25.

Balsimo makes no attempt to analogize his case to *Murray* and simply claims that *Murray* is "notabl[e]." Furthermore, Balsimo's reading of *Murray* is incorrect to the extent Balsimo intends to argue that it stands for the proposition that the UCC allows a buyer to revoke acceptance of the RV after driving it for a time. The UCC allows a buyer to revoke his or her acceptance of a good "whose nonconformity substantially impairs its value to the buyer" within a reasonable time after the buyer discovers or should have discovered the nonconformity "and before any substantial change" in the good's condition that is not caused by the defect. WIS. STAT. § 402.608(1)-(2). Balsimo, however, does not cite this provision or make any argument regarding its applicability.

ACC, to declare Balsimo the legal owner of the RV, and to determine ACC's damages for its trespass claim.[11]

*By the Court.*—Judgment reversed and cause remanded with directions.

Recommended for publication in the official reports.

---

[11] ACC additionally argues that: (1) the circuit court's interpretation of the Penalties Provision was contrary to public policy; and (2) the court erroneously found that it did not need to consider the Penalties Provision in its entirety to reach its decision. Given our conclusion that the court erred in its interpretation of the Penalties Provision under principles of contract interpretation and the UCC, we need not address ACC's additional arguments. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 ("[W]e decide cases on the narrowest possible grounds.").